IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD HARVAN, | : | CIVIL ACTION NO. **3:CV-05-1431** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| KOVATCH CORPORATION, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Currently pending before the Court is the Defendant's Motion for Summary Judgment filed

on July 18, 2006, with respect to the two remaining claims of Plaintiff, *i.e.* Counts I & II.[1] **(Doc.**

**22)**.[2]  The Motion has been briefed. (Docs. 23, 25 and 26).[3]

---

[1]By Stipulation, Plaintiff's Third Cause of Action for Intentional Infliction of Emotional Distress (IIED), Count III, was withdrawn by Plaintiff with prejudice.  Since the individual Defendants were named only with respect to Plaintiff's IIED claim, Count III, and it has been withdrawn, we refer herein only to the remaining Defendant, Kovatch Corporation ("Kovatch"). (Doc. 1, ¶ 48.-50.).

[2]We  note that Defendant did not file a separate Statement of Undisputed Facts ("SMF"), with numbered paragraphs, as required by Local Rule  56.1, M.D. Pa.  Defendant does, however, include its SMF in the body of its Brief in support of its Summary Judgment Motion, and it cites to evidence of record to support its statements of facts.  (Doc. 23, pp. 4-14). Plaintiff did not file a paragraph-by-paragraph Response to Defendant's statements of facts. Notwithstanding the failure of the parties to follow the Local Rule of this Court, we shall consider Defendant's SMF in its Brief in support of its pending Motion.

We also note that several exhibits were filed in support of the Defendant's Motion.  (Doc. 24).  The Plaintiff's sole exhibit, *i.e.* his August 2006 Affidavit, is attached to his opposition Brief. (Doc. 25).

[3]We have been assigned this case for pre-trial management purposes.

The Plaintiff, Edward Harvan, filed this action on July 18, 2005, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631, *et seq.* (Count I).  Plaintiff also asserted a Retaliation claim under the ADEA, and he avers that he was retaliated against by Defendant for reporting his exposure to a hostile work environment and age discrimination.  (Count II and Doc. 1, ¶ 21.).[4]  Plaintiff also raised a pendent state law IIED claim (Count III) against the individual Defendants, but it was withdrawn with prejudice.  (Doc. 8).[5]  In his Complaint, Plaintiff alleged discriminatory discharge from his employment with Defendant Kovatch based on his age, in violation of the ADEA, and he alleged that Defendant retaliated against him for exercising his rights under the ADEA.  (Doc. 1, ¶'s 39.-47.).[6]  On September 26, 2005, the Defendant filed its Answer to the Complaint with affirmative defenses.  (Doc. 9).

Initially, we note that Plaintiff does not contest Defendant's Summary Judgment Motion with respect to his ADEA retaliation claim, Count II.  (Doc. 25, p. 7, n. 2).  Plaintiff also concedes that the facts in this case do not support a claim for hostile work environment discrimination.  (*Id.*, p. 7).  Defendant notes this concession in its Reply Brief.  (Doc. 26, p. 1, n. 1).  Thus, we shall only

---

[4]It is undisputed that Plaintiff received his Right to Sue letter from the EEOC prior to instituting this action. Doc. 23, p. 2 and Doc. 24, Ex. T.).

[5]In the Joint Case Management Plan filed by the parties, Plaintiff indicated that he intended to add a claim under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951, *et seq.*  (Doc. 11, p. 4, ¶ 1.80).  However, to date, Plaintiff did not add a claim under the PHRA.

[6]Defendant notes that Plaintiff actually was employed by Kovatch Mobile Equipment Corporation. Doc. 23, p. 2, n. 1.  In any event, we simply refer to Defendant herein as Kovatch.

consider Plaintiff's ADEA claim (Count I) as it relates to age discrimination.  We will recommend that Defendant's Summary Judgment Motion be granted as uncontested with respect to Count II of the Complaint, Plaintiff's ADEA retaliation claim, and with respect to Plaintiff's hostile work environment claim. (*See* Doc. 1, ¶ 21.).

## II.   Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law.  *Anderson*,  477 U.S. at 248.  "Facts that could alter the outcome are material facts."  *Charlton v. Paramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Factual Background.

Since, as noted, Defendant has included its SMF in its Facts section of its Brief (Doc. 23, pp. 4-14), and its facts are properly supported by citation to evidence, we shall adopt as our own all of Defendant's facts contained in its SMF that are supported by citation to evidence and that are not disputed by Plaintiff through his evidence, *i.e.* his Affidavit. To the extent that Plaintiff's evidence disputes Defendant's facts detailed in its SMF, we shall not adopt Defendant's facts as our own.

We find that Plaintiff, either in his opposition Brief or by a separate filing, has not responded to Defendant's SMF contained in its Brief as required by Local Rule 56.1 of M.D. Pa. (Doc. 25). Defendant has offered evidentiary support for its stated factual paragraphs contained in its Facts section of its Brief, which we refer to as its SMF. (Doc. 23, pp. 4-14). Therefore, we accept the stated facts contained in Defendant's Brief that are supported by its evidence and that are not

4

controverted by Plaintiff's evidence, and we will adopt them as our own herein.  *See U.S. ex rel.*

*Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third

Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed

by the other party with sufficient citation to the record).[7]  We shall also include Plaintiff's facts

averred in his Affidavit.  (Doc. 25, Ex. A  att. Affidavit).[8]  Therefore, we adopt the following facts

derived from Defendant's SMF:

> Plaintiff began working at Kovatch in 1987. [Kovatch mainly
> manufactures specialty heavy-duty motor vehicles, including
> fire trucks. (Doc. 23, p. 3).  At that time, Plaintiff was fifty-two (52)
> years old and well within the protected age class. See Defendants'
> Requests for Admissions and Plaintiff's Answers thereto [Doc. 24] attached
> as Exhibits "B" and "C" respectively.

> Plaintiff began his employment as a Shear Helper, not as a Senior
> Hose Assembler.  See Transcript of Plaintiff's Deposition Testimony
> attached hereto as Exhibit "D" at p. 9.  Plaintiff was hired by John
> "Sonny" Kovatch, Jr.  Id. at pp. 9, 59-60.  John "Sonny Kovatch, Jr.
> is currently 81 years old, and Plaintiff testified that he would refer
> to Sonny as "the old man." Id. at p. 99.  See also Exhibits "B" and
> "C" at Request No. 12.

> In late 1987 or early 1988, Plaintiff moved to the position
> of Senior Hose Assembler.  See Exhibit "D" at 11.  As a Senior
> Hose Assembler, Plaintiff's job responsibilities primarily consisted
> of assembling high-pressure hydraulic hoses for fire trucks.  See
> Exhibits "B" and "C" at Request No. 4.  Plaintiff testified that he
> was the only Senior Hose Assembler at Kovatch, Id. at pp. 12, 32,
> and that in 2004 at the time of his termination, he was the only
> one at Kovatch making hoses for trucks. [FN2] Id. at p. 365.

---

[7]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

[8]We include both Defendant's and Plaintiff's version of the facts regarding the May 2004
incident of two hose failures.

[FN2] While Plaintiff testified that other people made hoses on an as-needed basis, he was the only employee whose primary responsibility was assembling hoses.

Plaintiff's job involved the assembly of two (2) different systems of hoses: 1) reusable hoses with threaded fitting; and 2) hoses with crimped collars. Id. at pp. 13-14. Relevant to this case, hoses with crimped collars are assembled by inserting the hose into the collar until it "bottoms out" in the inside of the collar. Id. at p. 47. The collar and hose are then put into a machine that crimps the collar around the end of the hose that has been inserted into the collar. Id. at pp. 14-15. If not enough hose length has been inserted into the collar, the hose can come out of the collar. Id. at p. 15. Plaintiff admitted that such a situation can create a safety risk. Id. at pp. 16-17.

To ensure that enough hose length has been inserted into the collar, the hose manufacturer's manual for hose assembly states: "[T]o insure that hose is bottomed in collar, mark the insertion depth on the hose before inserting it in the hose end." See Weatherhead Hose Assembly manual dated November 2003 attached hereto as Exhibit "E" at p. 342. Plaintiff's immediate supervisor, Ron Arndt (age 59) testified that even if the hose has "bottomed out" in the collar, the pressure involved in the crimping process can cause the hose to move down, away from the bottom of the collar. See Deposition Transcript of Ron Arndt attached hereto as Exhibit "F" at p. 72. Therefore, the only way that one can visually determine if a hose is improperly crimped and prone to failure is to mark the insertion depth on the hose before crimping. Id. at pp. 71-72. Kovatch's production manager, Francis Smell, testified that over ninety percent (90%) of hose failures are a result of the hoses not being inserted properly in the collars. See Deposition Transcript of Francis Smell, attached hereto as Exhibit "G" at p. 37.

Plaintiff testified:

Question:     Was it your practice to mark hoses as you made them?

Answer:       No.

Question:     So you never marked  --

6

| Answer: | I did at times. |
|---|---|
| Question: | Okay. |
| Answer: | Sometimes I didn't.  If the fitting was going on harder or though, then I did.  But nine ties out of tine, it never did.  It went on smooth and I could feel when it bottomed out. |

Exhibit "D" at p. 47.  Plaintiff failed to mark hoses during assembly despite the fact that Mr. Smell instructed Plaintiff to do to ensure that the hoses were [seated] properly.  See Exhibit "G" at pp. 36-37.

Plaintiff testified that other hoses that he assembled failed during his employment at Kovatch.  See Exhibit "D" at p. 30-31.

In 1998, Plaintiff received a written warning from "Sonny" Kovatch after Plaintiff was observed reading a newspaper with his feet up on a desk during production hours.  See Written Warning attached hereto as Exhibit "J" and Deposition Transcript of Kovatch's Human Resources Director, Ronald Blisard, attached hereto as Exhibit "K" at pp. 16-17.  After being confronted regarding his behavior, Plaintiff replied with a sarcastic answer to the effect of "you get what you get."  Exhibit "J."

Mr. Smell also noted that Plaintiff was disrespectful to both his fellow employees and management and displayed a dislike for following orders or answering to anyone.  Exhibit ["I"] at ¶ 4.

Specifically, Plaintiff testified that he was questioned by Mr. Smell about hoses having dirt in them and was asked by Mr. Smell to demonstrate how this could occur.  Plaintiff admitted that he said " . . . no, I says, I don't do that.  I wouldn't demonstrate it for them.  I wouldn't demonstrate how to block a hose . . ." [Exhibit "D"] at p. 50.

Plaintiff's performance review for 2001 was scored at a "2" for 2001.  See 2001 performance review of Plaintiff attached hereto as Exhibit "L."  Under Kovatch's performance review scale, a "2" equates to a review of "needs improvement."  See Affidavit of Ronald Blisard attached hereto as Exhibit "M" at ¶ 4.  Plaintiff's review for 2002 was   . . . a 2.1215.  See 2002 performance review

attached hereto as Exhibit "N."  However, this score is
still interpreted as "needs improvement."  Exhibit "M" at ¶ 5.
No performance reviews were performed in 2003 or in 2004 prior
to Plaintiff's termination.  Id.

In or around 1999, Plaintiff turned sixty five (65) years
of age.  Plaintiff testified that at that time, no one from Kovatch
asked him about retiring.  Exhibit "D" at pp. 75-76.  Plaintiff
stated that in order to maintain his employment, he just kept
working and nobody approached him about retirement.
Plaintiff also testified that he knows other people at Kovatch
who have worked past not only their sixty fifth (65th) birthday,
but also [one employee] past their seventieth (70th) birthday
as well.  Id. at pp. 76-77.

In February 2004, Plaintiff turned seventy (70) years old.

He voluntarily made his age known to his fellow employees.  Exhibits
"C" and "D" at Request No. 19.

Plaintiff admitted that he did not report any age-based harassment
to his supervisors.  Exhibits "B" and "C" at Request No. 20.

Around the end of May 2004, Plaintiff made a hose that
failed during pump testing (while still in the Kovatch facility) after
being installed on a fire truck that was manufactured for
Jefferson Indiana.  See Exhibit "I" at ¶ 9.  This hose failure
resulted in hydraulic fluid being sprayed over everything in the
immediate area and required Kovatch to expend additional time
and effort in the clean up process.  Id.; Exhibit "G" at pp. 43-44.
Kovatch also was forced to expend additional time and effort to
uncover the cause of the failure.  Id.  It was determined that this
hose failure was the result of the hose not having been inserted
deeply enough into the collar before being crimped.  Id.

After the first hose failed, a new hose was ordered to be made
by the Plaintiff and was installed on the truck so that testing
could be resumed.  Exhibit "I" at ¶ 10.  With regard to this
incident, Plaintiff testified as follows:

. . . one on at first, sent it up to the building where
it was supposed to go, it came off.

8

> So they call me up and say, Ed, the fitting came off.
> I said, okay, I am going to put another one.  So I did another
> one, the same thing happened, so that one came off.  When
> the second one came off, I said to myself there is something
> wrong here.  <u>I must be doing something wrong.</u>

Exhibit "D" at p. 27 (emphasis supplied).

Plaintiff did assemble both of these hoses.  Specifically, Plaintiff
testified as follows:

> Answer:        . . . Two hoses were made by me all right,
>                before I went on [Memorial Day] vacation . . .
>
> Question:      But you did make two faulty hoses that were
>                the basis of your termination?
>
> Answer:        True.

Exhibit "D" at p. 69.   In his answers to the EEOC Questionnaires
in this case, Plaintiff stated "I made two faulty hoses (in my
seventeen years of service) that malfunctioned during test mode . . ."
<u>See</u> Plaintiff's Answers to EEOC Discipline Questionnaire attached
hereto as Exhibit "O" at p. 6.  After the second hose failed, Mr.
Smell personally took the failed hose to Plaintiff and told him that it
was Plaintiff's poor workmanship that caused both hoses to fail.
Exhibit "I" at ¶ 11.  Specifically, Mr. Smell told the Plaintiff that:

> I said this is the second hose that failed in a two day stretch,
> it wasn't put on properly like I told you you had to do it
> before, it wasn't inserted properly, it better never happen
> again, this is bad workmanship, something could have
> caught fire and disciplinary action could be taken.

Exhibit "G" at p. 25.  Mr. Smell testified that Plaintiff was [at first]
offensive when he was confronted with the faulty hose but then
Plaintiff realized that it was his fault.  <u>Id.</u> at p. 41.  Mr. Smell then
called Ronald Blisard and told Mr. Blisard that two hydraulic hoses
had failed back-to-back costing Kovatch a lot of time and money and
suggested that disciplinary action be taken with respect to the
Plaintiff.  <u>Id.</u> at pp. 39-40. Mr. Smell did not suggest what type of
disciplinary action should be taken.  <u>Id.</u> at p. 26.

After hearing about the hose failures from Mr. Smell, Mr. Blisard then contacted "Sonny" Kovatch regarding Plaintiff's poor workmanship.  Exhibit "K" at p. 23; see also Affidavit of John "Sonny" Kovatch, Jr., attached hereto as Exhibit "P."  After considering the risk of safety created by these hose failures, the extra work and expense incurred in cleaning up and correcting these failures as well as Plaintiff's general work history, Sonny Kovatch decided to terminate Plaintiff's employment.  Exhibit "P" at ¶ 6.  When Plaintiff returned to work from the Memorial Day holiday on June 1, 2004, Mr. Blisard met with the Plaintiff, informed Plaintiff that his employment was terminated and gave Plaintiff a termination notice attached here to as [Doc. 24] Exhibit "Q."  Significantly, at the time the decision was made to terminate the Plaintiff, Mr. Blisard testified that he did not know how old the Plaintiff was, and that he thought that the Plaintiff was younger than himself.  Exhibit "K" at p. 29. [FN4]

[FN4] Ronald Blisard is sixty-three (63) years old. Exhibit "K" at p. 14.

Immediately after he was informed of his termination by Mr. Blisard, Plaintiff admitted that he ripped up some of his notes regarding aspects of hose assembly that he created on company time and maintained in the workplace.  Exhibit "D" at p. 73.  Plaintiff stated that he did this because "I felt that why should I leave someone else all of my hard work that I did . . ."  Id. at p. 74.

After Plaintiff's termination, his job duties were redistributed among the following employees, the majority of whom are in the protected age class:

Milan Vaclavak, Jr.  --  age 53 [FN5];

Dale Ahner -- age 42;

David Breiner – age 39;

Vincent Dart  – 35;

Ron Arndt  – age 57.

<u>See</u> Exhibit "M" at ¶ 11.

[FN5] All ages listed are the ages of the employees in 2004.

It was not until over one (1)year after Plaintiff's termination [August 22, 2005] that Kovatch hired a full-time Hose Assembler. [Doc. 24, Ex. "M", ¶ 11.].

Plaintiff has not filled out any applications for new jobs or sent any resumes to prospective employers.  Exhibit "D" at pp. 90, 94.  The only measures that Plaintiff took to seek other employment was to place several phone calls.  <u>Id.</u> pp. 90-93.  Plaintiff further testified that he has taken no action whatsoever to find employment since the beginning of 2005. <u>Id.</u> at pp. 92-94.

In November 2004, Plaintiff filed a charge of discrimination with the EEOC.  After investigating the claim, the EEOC was unable to conclude that Plaintiff was the subject of unlawful discrimination and issued Plaintiff a right-to-sue letter on or about June 2, 2005.  <u>See</u> Right to Sue letter attached hereto as Exhibit "T."

(Doc. 23, pp. 4-14).[9]

We also adopt Plaintiff's following facts as averred in his Affidavit, pp. 1-3, Ex. A attached

to his Brief, Doc. 25:[10]

3.      Throughout the course of my seventeen year employment with Kovatch, I made an average of seventy hoses per day, which amounts to some One Million Four Hundred Forty-four Thousand hoses.

---

[9]All Exhibits referenced in Defendant's SMF are attached to Doc. 24.   We have reviewed Defendant's citation to the record as contained in its Doc. 24 with respect to the facts stated above.

[10]We have considered the evidence in the light most favorable to the nonmoving party, <i>i.e.</i> the Plaintiff, as we must do.  <i>See White, supra.</i>

11

4.      No hose was ever reported to have been faulty until May 2004.

5.      The equipment that I used to install fittings on hoses at Kovatch was a bench mounted machine, which I believe was the T-400 "Coll-o Crimp."

7.      Defendants' reference to "marking" the depth of the fitting on the hose prior to inserting it in the fitting is not part of the procedure for the use of the bench mounted crimper, but is required for a crimping tool which is not bench mounted.

9.      The reason for marking a hose when using a portable tool is that the hose may be pushed out when using the portable tool.  This is not possible when using the bench tool.

10.     In my deposition, I explained that the hoses that I made in the end of May 2004 were a new style [thicker] hose that had not previously been used at Kovatch, and that it took two failed efforts to properly assemble that style hose.

12.     The difference between the other hoses at Kovatch, and the ones that I assembled in May 2004, is that the hose was thicker and had a smaller inside diameter.  The end fittings were made for the old hose, and therefore did not fit into the hose as easily.  Once I realized that greater force would be required to insert the fitting, I was able to make hoses with this combination of hose and fittings without any problem.

13.     I explained this to Francis Smell when he brought the second hose to me in May 2004.

14.     The failure of the two hoses was not related to "marking" the hose for the depth of the fitting.

15.     The failure of the hoses was caused by either Kovatch not obtaining parts that mated properly or an error in

installation on the truck.

16.  I also reviewed the Affidavit of Ron Arndt, Jr. (Defendants' [Doc. 24] Exhibit H), which states (¶ 11), that I had a negative attitude toward work.

17.  This is a false statement.

18.  I approached my work in a positive and craftmanlike manner.

19.  I was never counseled or otherwise disciplined at any time for having a negative attitude.

21.  Mr. Arndt also claims in ¶ 11 that I responded to a request for an expedited assembly of a hose with "you'll get it when I am good and ready."

22.  This is a false statement.  I never made that or any similar statement, nor did I ever refuse to assemble a hose on an expedited basis.

23.  I was never counseled or otherwise disciplined at any time for refusing to make a hose on an expedited basis.

25.  I have reviewed the Affidavit [of] Francis Smell (Defendants' Exhibit I), which states (¶ 5), that "on numerous occasions throughout [my] employment at Kovatch, [I] assembled hoses and/or lines in such a manner that they failed when utilized as intended."

26.  This is a false statement.  Until May 2004, no hose that I assembled failed during testing or in use.  Some were not properly assembled, and I detected the error prior to providing them for installation.

27.  I was never counseled, otherwise disciplined or even told at any time prior to May 2004, that any hose that I made had failed in testing or in use.

29.  I have reviewed the Deposition of Mr. Smell which states

13

that I refused to make hoses for people I did not get along with.

30.     This is a false statement. I never refused to make hoses for anyone.

31.     I was never counseled, otherwise disciplined or even told at any time that anyone had complained that I refused to make a hose.[11]

Based on the evidence detailed above, a dispute exists as to the reason why the hoses Plaintiff made for Kovatch in May 2004 failed, *i.e.* whether it was because of the new, thicker hose style at Kovatch did not properly mate with the end fittings used for the old style hoses, or whether it was because of poor workmanship by Plaintiff.  However, while a disputed fact exists as to the cause of the hose failures in May 2004, we find that Plaintiff has not produced enough evidence to refute the Defendant's proffered non-discriminatory reason for his June 1, 2004 termination.

As stated, this is an age discrimination case brought under the ADEA.  The Plaintiff alleges in his ADEA claim that the Defendant discriminated against him on the basis of his age, *i.e.* 70, when it terminated his employment on June 1, 2004.  As stated, this case has been dismissed against all of the individual Defendants.   Only Count I, Plaintiff's age discrimination claim against Defendant Kovatch, remains.

_____

[11]Plaintiff did not submit any of his own evidence other than his stated Affidavit.  In his Brief, Plaintiff largely refers to Defendant's evidence, Doc. 24.

**IV.  Discussion**.

Defendant has moved for summary judgment based upon Fed. R. Civ. P. 56, arguing that there is no genuine issue of material fact in dispute with respect to Plaintiff's remaining age discrimination claim under the ADEA, since Plaintiff cannot make out a *prima facie* case of age discrimination and since it has articulated  legitimate non-discriminatory, non-pretextual reasons for its action.  Defendant also argues that Plaintiff's claim should be dismissed due to after-acquired evidence which shows that Plaintiff cannot recover any damages.  (Doc. 23, pp. 14-15).  We do not address Defendant's arguments that Plaintiff has not established claim under the ADEA for a hostile work environment and a claim under the ADEA for retaliation since, as stated above, Plaintiff concedes he has not.  Thus, Plaintiff does not contest Defendant's present Motion with respect to his hostile work environment claim and his claim under the ADEA for retaliation. (Doc. 25, p. 7).

**A.  Discrimination Claim.**

In *Davis v. Tammac Corp*. 127 F. Supp. 2d 625, 628-29  (M.D. Pa. 2000),  this Court stated as follows:

> Discrimination claims can be established in two ways: by direct evidence that the employer's decision was motivated by discrimination; or by indirect evidence which creates an inference of discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed 2d 668 (1973). [FN6] Under the *McDonnell Douglas* burden shifting analysis, the plaintiff bears the initial burden of offering evidence sufficient to "create an inference that an employment decision was based on a discriminatory criterion illegal under the act." *Maxfield v. Sinclair International*, 766 F.2d 788, 791 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed. 2d 773 (1986). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must then offer evidence

that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge. *Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 235 (3d Cir. 1999); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). If the defendant satisfies this requirement, then the burden of production shifts back to the plaintiff to point to some evidence that the reasons offered by the defendant were a pretext for discrimination. *Shaner v. Synthes*, 204 F.3d 494, 500-01 (3d Cir. 2000). To defeat summary judgment, the plaintiff must proffer evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Showalter*, 190 F.3d at 235; *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 197) (*en banc*); *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir. 1994) "To discredit the employer's proffered reason, [ ] the plaintiff cannot simply show that the employer's decisions were wrong or mistaken . . . Rather the moving plaintiff must demonstrate such weaknesses or implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact-finder could find them unworthy of credence. *Fuentes, 32 F.3d at 765; Sylvester v. Unisys Corp.*, No. Civ. A. 97-7488, 1999 W 167725, at * 4 (E.D. Pa. March 25, 1999). The trial court's function on a summary judgment motion is to determine whether plaintiff's evidence is insufficient "to permit a reasonable fact finder to conclude that the [employer's] reasons are incredible." *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir.) (*en banc*), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997).

In this case, we do not find that there is direct evidence of discrimination. Thus, the parties properly focus on the *McDonnell Douglas* burden shifting analysis. (Doc. 23, p. 22 & Doc. 25, p. 5).    *See Glanzman v. Metropolitan Management Corp.*, 290 F. Supp. 2d 571 (E.D. Pa. 2003).

### B. ADEA Standard.

In *Duffy v. Paper Magic Group, Inc.*, 265 F. 3d 163, 167 (3d Cir. 2001), the Third Circuit set

forth the following elements to establish an ADEA age discrimination claim:

> The ADEA prohibits employers from discriminating against individuals
> in hiring, discharge, compensation, term, conditions or privileges of
> employment on the basis of their age.  *See* 29 U.S.C. § 623(a)(1).  Age
> discrimination may be established by direct or indirect evidence.  *See*
> *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).  When
> evaluating ADEA discrimination claims based on indirect evidence, a
> plaintiff may establish a prima facie case of age discrimination under
> the ADEA by demonstrating that she: (1) was a member of a
> protected class, i.e., that she was over forty, (2) is qualified for the
> position, (3) suffered an adverse employment decision, (4) and was
> ultimately replaced by a person sufficiently younger to permit an
> inference of age discrimination.  *See id.* at 973.

Both parties also recognize the applicable elements to establish an ADEA age discrimination

claim. (Doc. 23, p. 22 & Doc. 25, p. 5).

The *Duffy* Court also noted that:

> A prima facie case creates an inference of unlawful discrimination.
> The burden of production then shifts to the employer who can dispel
> the inference by articulating a legitimate, nondiscriminatory reason for
> its actions.  *See Connors*, 160 F.3d at 974 n. 2.  If the employer
> meets this burden, the employee must then prove by a
> preponderance of the evidence that the articulated reasons are a
> pretext for discrimination.  *See id.*  Where the employee is
> unable to establish a prima facie case, however, no inference of
> discrimination is raised and the employer has no burden to proffer
> a reason for any action.  *Spangle v. Valley Forge Sewer Auth.*,
> 839 F.2d 171, 174 (3d Cir. 1988).

*Id.*

17

As the parties recognize (*Id.*), the ADEA does not allow "age discrimination by employers against employees and applicants for employment." *EEOC v. Zippo Mfg. Co.*, 713 F. 2d 32, 35 (3d Cir. 1983) (citations omitted).[12]

       1.  *Prima Facie Case of Age Discrimination.*

In addressing each of the above elements necessary to establish a *prima facie* case of age discrimination when an employee lacks direct evidence of discrimination, we agree with Plaintiff (Doc. 25, pp. 5-6), and find that the evidence demonstrates that the Plaintiff was within the protected class, as he was 70 years of age when he was terminated by Defendant on June 1, 2004. Defendant agrees that Plaintiff was within the protected age class. (Doc. 22, p. 2).

We also agree with Plaintiff (Doc. 25, pp. 5-6) and find that he has satisfied the second element, in that he was, in fact, qualified for his position. Plaintiff began working for Kovatch in 1987 and within one year became a Senior Hose Assembler, and his primary responsibility was assembling hoses. (Doc. 22, p. 3). *See also* Doc. 24, Ex. M, p. 1.

With regard to the third element, which requires Plaintiff to demonstrate that he suffered an adverse employment decision, we find that, despite Plaintiff's undisputedly being qualified for his position, he was terminated. *See Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 (3d Cir. 1988).

The Defendant argues that the Plaintiff is unable to establish the fourth element, in which the Plaintiff must establish that he was replaced by a sufficiently younger person to create an

---

[12]There is no claim in this case that Defendant was not an employer as defined in the ADEA.  29 U.S.C. § 630(b).  Nor is there any claim that Plaintiff was not an employee of Defendant.

inference of age discrimination or that a sufficiently younger person was retained. (Doc. 23, Summary Judgment Motion support Brief, p. 22). The Defendant argues that the Plaintiff cannot meet this requirement, in that he was not replaced for over one year after his termination, and since his job duties were re-distributed to other employees, most of whom were in the protected age class. (*Id*.). *See also* Doc. 24, Ex. M, p. 2.[13] Thus, Defendant contends that Plaintiff's job functions were split up between various other employees who assumed those functions along with their prior duties. (*Id*.). The Defendant admits that absorption of Plaintiff's work by younger employees may give rise to an inference of age discrimination in certain circumstances, but argues that Plaintiff must show evidence that his discharge was part of a pattern of the employer to discharge employees over 40 and of distributing their work to younger employees. (Doc. 23, p. 23). Defendant claims that Plaintiff has not offered any evidence of a pattern of discharging employees over 40 and of redistributing their work to younger employees. (*Id*.).

In the alternative, Defendant argues that it should be granted summary judgment with respect to Plaintiff's ADEA claim, since Plaintiff has not sufficiently shown that he was terminated because of his age, and since it has shown that the proffered reason for terminating Plaintiff, *i.e.* poor workmanship for improperly assembling two hoses in May 2004, was not a pretext for age discrimination. (*Id*., p. 15). The Defendant also moves for summary judgment arguing, that Plaintiff cannot recover any damages. (*Id*.).[14]

---

[13]We do not find in the record the name of the person hired to replace Plaintiff on August 22, 2005, nor the age of this person. (Doc. 24, Ex. M, ¶ 11.).

[14]Previously, as stated, the Court issued an Order dismissing Plaintiff's Third Cause of Action for Intentional Infliction of Emotional Distress.

We agree with Plaintiff that he has met the fourth element necessary to establish a *prima facie* case of age discrimination under the ADEA.  We also agree with the Plaintiff insofar as he seems to argue that a mechanistic and ritualistic approach should not be unitized in order to determine if the fourth prong of a *prima facie* case has been met, and that he does not have to prove that Defendant treated similarly situated employees outside of his class more favorably. (Doc. 25, pp. 6-7).  *See Davis, supra*, 127 F. Supp. 2d at 633.[15]  ("[A] *prima facie* case cannot be established on a one-size-fits-all basis.") (citation omitted).  As the *Davis* Court stated, "a *prima facie* case of age discrimination does not require that plaintiff show that he or she was replaced by someone outside of the protected class, but merely requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . .'". *Id.* (citations omitted).

The Plaintiff cites to *Sarullo v. U.S.P.S.*, 352 F. 3d 789 (3d Cir. 2003).  (Doc. 25, p. 6). In the case of *Sarullo v. U.S. P.S.*, 352 F. 3d 789, 798, n. 7 (3d Cir. 2003), the Third Circuit Court noted:

> The facts necessary to establish a *prima facie* case of discrimination
> under Title VII vary depending on the particular circumstances

---

[15]The standard for a circumstantial evidence case, as this case undisputedly is, was set forth by the Third Circuit in *Watson v. Southeastern Penn. Trans. Auth.*, 207 F.3d 207, 215 (3d Cir.2000). In *Watson*, the Court stated, "In 'pretext' cases ... a jury must be charged that in order to find for the plaintiff, it must conclude that consideration of the impermissible factor was 'a determinative factor' in the adverse employment action." *Id.* This requirement is different from the  "mixed-motives" or "direct evidence" cases, in which age only has to be a "motivating" factor. *Id.*  We find that Plaintiff is not proceeding under a "mixed motives" theory.

of each case. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct.
1817 n. 13. The defendants suggest that the fourth element requires
a showing that "other similarly situated employees outside [Sarullo's]
protected class were more favorably treated under similar
circumstances." While a number of our decisions suggest such
a showing was required in the past, *see, e.g., Lawrence v. Nat'l.
Westminster Bank,* 98 F.3d 61, 68 (3d Cir.1996) (plaintiff must
prove he/she was replaced by person outside protected class to
create an inference of discrimination), that is not the current law
in this or the majority of the circuits. *See Pivirotto,* 191 F.3d at 354.
In *Pivirotto,* we explicitly rejected a requirement that a plaintiff prove
he was replaced by someone outside the protected class to prove a
*prima facie* case of discrimination. 191 F.3d at 352. We require only
that the plaintiff show that the employer continued to seek out
individuals with similar qualifications after refusing to rehire the
plaintiff under circumstances that raise an inference of unlawful
discrimination. *See id.* ("Nowhere did the [Supreme Court]
describe the fourth element as hiring of (or, by implication, replacement
by) a person outside the plaintiff's class.")

We agree with Plaintiff that our inquiry is whether he has submitted evidence sufficient to

establish the elements of a *prima facie* case and then sustained his burden of proving that

defendant's reasons were a pretext.  *See Bruno v. W.B. Saunders Co.,* 882 F.2d 760, 764 n. 2 (3d

Cir. 1989). (Doc. 25, pp. 6-7).

Construing the evidence in the light most favorable to Plaintiff, it is sufficient for a reasonable

fact-finder to determine that five  similarly situated younger employees (two of whom were under

40, *i.e.* David Briener and Vincent Dart, Doc. 24, Ex. M) had some of Plaintiff's job duties

reassigned to them after he was terminated and that age bias against Plaintiff (at his 70th birthday

employees inquiring about when he would retire, Doc. 25, p. 7) was a factor in his termination.

The Plaintiff presented evidence that five  younger employees were reassigned his job duties  and

that when he turned 70, he was asked by various employees, including the owner's son-in-law,

when he was going to retire.  Employee Bob Skylar began to refer to Plaintiff as "old geezer."  (Doc. 24, Ex. D, pp. 77-78).  We find that it is undisputed that the teasing of Plaintiff regarding his age and when he would retire was known to staff and supervisors at Kovatch and was permitted.  (Doc. 24, Ex. H, p 2).  A younger employee  than Plaintiff also asked him when he was going to retire so that he might get Plaintiff's job.  We agree with Plaintiff that, despite Plaintiff's deposition testimony that he felt the other employees were joking, this undisputed evidence, construed in the light most favorable to Plaintiff, is sufficient for a reasonable fact-finder to determine that age was a factor in Plaintiff's termination.  In this day and age, we find such comments, even if made in a joking manner, are inappropriate in the work force.[16]

Presenting indirect evidence of discrimination meets the three-step framework of *McDonnell Douglas* (where plaintiff relies on the inferences that can be drawn from the *prima facie* case). *See Fakete v. Aetna, Inc.,* 308 F.3d 335, 337-38 (3d Cir.2002). This case, as stated, is proceeding under the *McDonnell Douglas* framework, and thus is  a "pretext" case.

We find, as Plaintiff argues, that the evidence, as discussed above, sufficiently shows that he was substantially replaced by five younger employees at Defendant's facility, that portions of his job functions were assumed by these five  younger employees, and that  his duties remained at Kovatch following his termination.

---

[16]We agree with Plaintiff that it is of no moment that Defendant first hired Plaintiff when he was 52 and that the owner, who ultimately decided to terminate Plaintiff, was older than Plaintiff.  (Doc. 25, pp. 7-8).

Since we find that the Plaintiff has established a *prima facie* case of discrimination and that he has met his burden of proof of intentional discrimination through indirect evidence, the Defendant, as it recognizes, must provide a legitimate non-discriminatory reason for its decision to terminate the Plaintiff.  (Doc. 23, pp. 25-31 & Doc. 26).

2. *Defendant's Non-Discriminatory Reason for its Action.*

Defendant states that the undisputed evidence shows that the basis for its decision to terminate Plaintiff was the fact that Plaintiff was the sole senior hose assembler at Kovatch and that two high-pressured hoses which Plaintiff assembled in May 2004, failed during pump testing. (Doc. 24, Ex. M).  These failures undisputedly cost Defendant both time and money, and could have resulted in a dangerous situation.  Notwithstanding Plaintiff's averment in his Affidavit that the new style thicker, higher pressure hoses, utilized around May 2004, did not mate properly with the old fittings (Doc. 25, Ex. A), and that the fittings did not mate as well with the new hoses by using the normal crimping procedure, the fact remains that Plaintiff did assemble the two defective hoses that both failed during pump testing and submitted them for engine installation.  While Plaintiff avers that it took two failed efforts to properly assemble the new style hose, based on the undisputed facts, Defendant has met its burden of showing a legitimate non-discriminatory reason for Plaintiff's June 2004, termination.  Plaintiff does not aver that, after assembling the two hoses in question and prior to his Memorial Day vacation, he informed his supervisor at Kovatch that his assemblies of the new type hoses in May 2004, could be defective, due to the old fittings, and that the hoses could fail pump testing  until he perfected the assembly for their thicker diameter.  As Defendant argues, if Plaintiff was unsure of the ability of his hose assemblies in May 2004, to

23

withstand pump testing scrutiny, he should not have submitted them for installation on a truck. (Doc. 26, p. 8).[17]

Indeed, Plaintiff testified that the only reason he was told he was terminated on June 1, 2004, was because of the failure during pump testing of the two hoses he assembled. (Doc. 24, Ex. D, pp. 54-55). We agree with Defendant that the undisputed evidence shows that it has met its burden of production by offering evidence that it had a legitimate non-discriminatory reason for its decision to terminate the Plaintiff. (Doc. 23, p. 26).[18]

We concur with Defendant that evidence as to its decision to terminate Plaintiff due to his defective assembly of two high-pressured hoses and their failure during pump testing amounts to its legitimate non-discriminatory reason for its decision to terminate the Plaintiff. (*Id*.). The Defendant's evidence shows that, after the two hoses Plaintiff assembled failed pump testing in May 2004, Defendant's owner decided that Plaintiff would be terminated due to his poor workmanship. We agree with Defendant that this evidence is sufficient to provide a legitimate non-discriminatory reason for its decision to discharge the Plaintiff. As the Defendant recognizes (Doc. 23, p. 26), since it has asserted a legitimate non-discriminatory reason\s for Plaintiff's termination, the Plaintiff must "provide evidence that would raise an inference of pretext in order to survive summary judgment."

---

[17]There is no dispute that Plaintiff assembled the two hoses in question. Doc. 25, Ex. A, pp. 1-2.

[18]As the *Sarullo* Court noted, "the Defendant only has the burden of production because the burden of proof in a discrimination claim remains with the Plaintiff." 352 F. 3d at 799, n. 10 (Citation omitted).

24

*Davis,* 127 F. Supp. 2d at 634.    As the *Glanzman* Court stated, "[t]o defeat a summary judgment motion based on a Defendant's proffer of a nondiscriminatory reason, the non-moving Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." 290 F. Supp. 2d at 578-579 (*citing Fuentes v. Perskie*, 32 F. 3d 759, 765 (3d Cir. 1994).

   *3.  Pretext for Discrimination.*

  We agree with Defendant and find that the Plaintiff has failed to provide evidence that would raise an inference of pretext.   (Doc. 26, pp. 3-10).   As the *Sarullo* Court indicated, the Plaintiff "must produce sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons for not rehiring him are a pretext for illegal discrimination ... . "   352 F.3d at 799.

  The *Sarullo* Court also stated that the Plaintiff may meet this burden and defeat a motion for summary judgment by providing evidence that would "allow a fact finder reasonably to '(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action.' *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 413 (3d Cir.1999) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994); *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir.1996))." *Id.* at 799-800.

  The *Sarullo* Court further stated that Plaintiff "can accomplish this by showing that the defendants' proffered reasons are weak, incoherent, implausible, or so inconsistent that 'a

reasonable fact finder could rationally find them unworthy of credence.' *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108-09 (3d Cir.1997). He can also meet this burden with evidence that "the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it could not have been the employer's real reason.' *Jones,* 198 F.3d at 413 (quoting *Keller,* 130 F.3d at 1109)." *Id.* at 800.

In our case, we concur with Defendant, and find that Plaintiff has not produced enough evidence to show that Defendant's reason as to why he was terminated in June 2004, was a pretext for age discrimination. (*Id.*). As both parties agree, and as the *Sarullo* Court has held, Plaintiff has to produce enough evidence to permit a reasonable fact finder to conclude that Defendant's proffered reason for terminating him, *i.e.* Plaintiff's undisputed defective assembly of the two high pressured hoses in May 2004, was a pretext for illegal age discrimination. *Id.*

As Defendant argues in its Reply Brief, Plaintiff's attempt to try to explain the reason for making the defective hoses , *i.e.* the machine he used (T-400) was a bench mounted crimper that did not require the marking of the hose, is misplaced. (Doc. 25, pp. 9-10 & Doc. 26, p. 3). Defendant's evidence has not shown that Plaintiff was terminated for failure to mark the two hoses. Rather, the undisputed evidence reveals that the only reason Plaintiff was given for his termination was that he assembled two defective high-pressured hoses and, seemingly, despite reservation about his ability to properly assemble the new style hose, he submitted them, one after the other, for engine installation where they failed during pump testing. These failures caused Defendant to lose time and money, and were potentially dangerous situations. In fact, at his deposition, Plaintiff admitted that he realized that, during the assembly of the two hoses in question, he "must be doing

something wrong." (Doc. 24, Ex. D, p. 27).

Plaintiff also argues that "it is inherently incredible that after seventeen years of making hoses with no record of failure, having made over a million hoses for Kovatch, Exhibit A [Doc. 25, Plaintiff's Affidavit], that [he] would be terminated for two faulty hoses." (Emphasis omitted)  (Doc. 25, p. 10).  In his Affidavit, Doc. 25, Ex. A, as discussed, Plaintiff avers that the new style thicker, higher pressured  hoses did not mate properly with the old fittings.  Plaintiff also testified that after he assembled two hoses that did not pass the pump testing, he modified the fabrication method so that the new hoses could be properly assembled.    (*Id*.).  Plaintiff states that after he gave the third hose to Mr. Smell, he explained to Smell what the fabrication problem was with the new style hoses.

Defendant points to Plaintiff's undisputed deposition testimony to show that there were numerous times that Plaintiff had hoses he assembled come apart, *i.e.* he estimated five times a year.  (Doc. 26, p. 4).  We shall not repeat Defendant's rendition of Plaintiff's testimony, since we find it, for the most part (*i.e.* except for minor punctuation and writing "happened" instead of "occurred") accurately stated by Defendant.  (Doc. 24, Ex. D, pp. 30-31).  We concur with Defendant that Plaintiff's 17-year service with Kovatch does not provide sufficient evidence to refute the explanation Defendant has given as to why Plaintiff was terminated.  (Doc. 26, p. 4).

Also, contrary to Plaintiff's claim that Defendant did not produce any evidence that he had a record  of poor performance (Doc. 25, p. 11),  we find that Defendant has shown that Plaintiff's performance reviews for 2001 and 2002, his last reviews before he was terminated, both revealed he needed improvement.  (Doc. 24, Exs. L, M & N).  Thus, we find that the evidence, in light of the

27

performance reviews, shows that Plaintiff had a record of work that needed improvement, and that his two faulty hose assemblies in May 2004 were not the only times his hose assemblies failed and his work required improvement.

Plaintiff contends that at the time he assembled the third new style hose, which he properly performed, he explained to Mr. Smell what the fabrication problem was. (Doc. 25, pp. 10-11). We agree with Defendant in its Reply Brief (Doc. 26, p. 8) and find that a reasonable fact-finder could certainly infer that, based on Plaintiff's lengthy experience with Kovatch and being the only senior hose assembler of high pressured hoses, and despite explaining the problem with the new hoses to Mr. Smell after the May 2004 failures, he would have thoroughly checked out his hose assemblies in May 2004, before he submitted them for test pumping and installation in the engine. In any event, the reason Defendant has shown for Plaintiff's termination was the defective assembly and submission of the two hoses that failed during pump testing.  The fact that Plaintiff later perfected the fabrication method for the assembly of the new style  hoses after the original two faulty submissions does not belie the undisputed fact that he did indeed assemble, back to back, faulty hoses for testing and installation in engines.  Further, Plaintiff's evidence does not sufficiently show that Defendant's proffered reason for his termination was a pretext for illegal age discrimination.  The evidence shows that Plaintiff's age simply had nothing to do with his June 2004 termination.

Based on the above, we find that the Plaintiff has sufficiently created an inference of age discrimination.[19]   However, we find that the Plaintiff has not offered sufficient evidence to refute the Defendant's proffered non-discriminatory reason for his termination.   Therefore, we shall recommend that Defendant's Summary Judgment Motion with respect to Plaintiff's remaining ADEA age discrimination claim (First Cause of Action) be granted.   As mentioned above, we shall also recommend that the Defendant's Summary Judgment Motion be granted, as unopposed, with respect to Plaintiff's hostile work environment claim and ADEA retaliation claim (Count II).[20]

## V.   Recommendation.

Based on the foregoing, it is respectfully recommended that the Defendant's Motion for Summary Judgment **(Doc. 22)** be granted.   Specifically, it is recommended that the Motion be granted as unopposed, with respect to Plaintiff's hostile work environment claim and ADEA retaliation claim (Count II).   It is also recommended that the Motion be granted with respect to

---

[19]As discussed above, we find that Plaintiff has not presented direct evidence of discrimination based on his age.  Plaintiff has offered circumstantial evidence which we have found created an inference of age discrimination, but was not sufficient to refute Defendant's non-discriminatory reason for his termination.

[20]Since we have found merit to Defendant's argument that its reason for terminating Plaintiff was not a pretext for age discrimination, we shall not address its final argument that Plaintiff cannot recover any damages.

Plaintiff's first Cause of Action for age discrimination in violation of the ADEA.   Finally, it is recommended that Judgment be entered in favor of the Defendant and against the Plaintiff.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 12, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD HARVAN, | : | CIVIL ACTION NO. **3:CV-05-1431** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| KOVATCH CORPORATION, | : | |
| | : | |
| Defendant | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 12, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**


**Dated: January 12, 2007**