**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD HARVAN,

    Plaintiff,

        v.

KOVATCH CORPORATION,

    Defendant.

CIVIL ACTION NO. 3:05-CV–01431

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Magistrate Judge Thomas M. Blewitt's Report and Recommendation (Doc. 27) and Plaintiff Edward Harvan's Objections to the Magistrate Judge's Report and Recommendation (Doc. 28).  For the reasons set forth below, the Court will adopt the Magistrate Judge's Report and Recommendation and overrule Plaintiff's Objections.  Accordingly, the Court will grant Defendant Kovatch Corporation's Motion for Summary Judgment (Doc. 22).

## BACKGROUND

As a preliminary matter, the Court notes that Plaintiff has failed to respond to Defendant's Statement of Material Facts as required by Local Rule 56.1 of the Local Rules of Court of the Middle District of Pennsylvania.  Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1.  As such, the Court adopts all of Defendant's facts that are properly supported by citation to evidence and that are not controverted by the evidence Plaintiff has filed in opposition to Defendant's motion. *See United States ex*

*rel. Paranich v. Sorgnard*, 396 F.3d 326, 330 (3d Cir. 2005) (noting with approval the district court's adoption of all the facts of one party which were not clearly disputed by the other party with sufficient citation to the record).  Plaintiff's evidence in opposition to Defendant's motion for summary judgment consists solely of his affidavit. (Doc. 25-2.) Accordingly, Defendant's version of the facts, to the extent they are not controverted by Plaintiff's affidavit, are as follows.

Defendant is a manufacturer of specialty heavy-duty motor vehicles, including fire trucks. (Doc. 23 at 3.)  Plaintiff began working for Defendant in 1987 at fifty-two (52) years of age. (Doc. 23 at 4.) Plaintiff was hired by John "Sonny" Kovatch, Jr. ("Kovatch"), who is currently eighty-one years old. (*Id.*)  Plaintiff referred to Kovatch as "the old man." Plaintiff began his employment with Defendant as a shear helper. (*Id.*)  In late 1987 or early 1988, Plaintiff moved to the position of senior hose assembler. (*Id.*)  As a senior hose assembler, Plaintiff was primarily responsible for assembling high-pressure hydraulic hoses for fire trucks. (*Id.*)  Plaintiff was the only senior hose assembler and, at the time of his termination in 2004, he was the only employee of Defendant with the primary responsibility of making hoses for trucks. (Doc. 23 at 4-5.)

Plaintiff's job involved the assembly of two (2) different systems of hoses – reusable hoses with threaded fitting and hoses with crimped collars. (Doc. 23 at 5.) Hoses with crimped collars are assembled by inserting the hose into the collar until it "bottoms out" in the inside of the collar. (*Id.*)  The collar and hose are then put into a machine that crimps the collar around the end of the hose that has been inserted into the collar. (*Id.*)  The hose can come out of the collar if not enough hose length has been

inserted into the collar. (*Id.*)  Such a situation, Plaintiff admitted, can create a safety risk. (*Id.*)

To ensure that enough hose length has been inserted into the collar, the hose manufacturer manual states that "to insure that hose is bottomed in collar, mark the insertion depth on the hose before inserting it in the hose end." (*Id.*)  Plaintiff's immediate supervisor, Ron Arndt ("Arndt"), testified that even if the hose has "bottomed out" in the collar, the pressure involved in the crimping process can cause the hose to move down, away from the bottom of the collar. (Doc. 23 at 5-6.)  Therefore, the only way that one can visually determine if a hose is improperly crimped and prone to failure is to mark the insertion depth on the hose before crimping. (Doc. 23 at 6.)  Defendant's production manager, Francis Smell ("Smell"), testified that over ninety (90) percent of hose failures result from the hose not being inserted properly in the collars. (*Id.*)

Plaintiff admitted in his deposition that he did not follow the hose manufacturer manual procedure of marking the hoses. (*Id.*)  Plaintiff failed to mark hoses during assembly despite the fact that Smell instructed Plaintiff to do so. (*Id.*)  Plaintiff admitted during his deposition that, on numerous occasions, hoses which he assembled failed. (Doc. 23 at 6-7; *see* Doc. 24-4 at 30.)

In 1998, Plaintiff received a written warning from Kovatch after Plaintiff was observed reading a newspaper with his feet up on his desk during work hours. (Doc. 23 at 7.)  After being confronted regarding his behavior, Plaintiff replied with a sarcastic remark. (*Id.*)  Smell also noted that Plaintiff was disrespectful to both his superiors and his co-workers and displayed a dislike for following orders or answering to anyone. (*Id.*)

Specifically, Plaintiff testified that he was questioned by Smell about hoses having dirt in them. (*Id.*)  Smell asked Plaintiff to demonstrate how this could occur.  (*Id.*)  Plaintiff refused to demonstrate it for Smell. (Doc. 23 at 8.)

Plaintiff received a score of two (2) in his annual performance review for the year 2001. (*Id.*)  A performance review score of two (2) meant that Plaintiff "need[ed] improvement." (*Id.*)  Plaintiff's performance review score for 2002 was two and one-eighth (2.125). (*Id.*)  This score also meant that Plaintiff "need[ed] improvement." (*Id.*)  No performance reviews were conducted in 2003 or 2004, the years prior to Plaintiff's termination. (*Id.*)

In 1999, Plaintiff turned sixty-five (65) years of age. (*Id.*)  Plaintiff testified that, at that time, Defendant did not ask him about retirement.  (*Id.*)  Plaintiff stated that, in order to remain employed with Defendant, he just kept working and nobody approached him about retirement. (Doc. 23 at 8-9.)  Plaintiff testified that he knows of employees of Defendant who worked past their sixty-fifth (65th) or even seventieth (70th) birthday. (Doc. 23 at 9.)

In February 2004, Plaintiff turned seventy (70) years old. (*Id.*)  Plaintiff voluntarily made his age known to his fellow co-workers. (*Id.*)  Plaintiff admitted that he never reported any age-based harassment to his supervisors. (*Id.*)

In late May 2004, Plaintiff made a hose that failed during pump testing after being installed on a fire truck. (*Id.*)  This hose failure caused hydraulic fluid to be sprayed over everything in the immediate area and required Defendant to expend additional time and effort to clean up the mess. (Doc. 23 at 10.)  Defendant was also forced to expend

additional time and effort to uncover the cause of the hose failure. (*Id.*)  Defendant

determined that the hose failure was the result of the hose not having been inserted

deeply enough into the collar before being crimped. (*Id.*)

After the hose failure, Plaintiff was ordered to make a new hose. (*Id.*)  This new

hose was then installed on the fire truck. (*Id.*)  Like the first hose, the second hose made

by Plaintiff failed during pump testing. (*Id.*)  Plaintiff stated in his deposition that "[w]hen

the second one [failed], I said to myself there is something wrong here.  I must be doing

something wrong." (*Id.*)

In his answers to the Equal Employment Opportunity Commission ("EEOC")

Questionnaires, Plaintiff stated that he "made two faulty hoses (in my seventeen years of

service) that malfunctioned during test mode . . . ." (Doc. 23 at 11.)  After the second

hose failed, Smell took the failed hose to Plaintiff and told him that it was Plaintiff's poor

workmanship that caused both hoses to fail during testing. (*Id.*)  Specifically, Smell told

Plaintiff that "this [was] the second hose that failed in a two day stretch, it wasn't put on

properly like I told you . . . , it wasn't inserted properly, it better never happen again, this

is bad workmanship, something could have caught fire and disciplinary action could be

taken." (*Id.*)  Smell stated in his deposition that Plaintiff, at first, was offensive when he

was confronted with the faulty hose but, then, realized that it was his fault. (Doc. 23 at

12.)  Smell then called Ronald Blisard ("Blisard") and told him that two hydraulic hoses

had failed back-to-back costing Defendant a significant amount of time and money. (*Id.*)

Smell suggested that disciplinary action be taken against Plaintiff. (*Id.*)  Smell did not

suggest what type of disciplinary action should be taken against Plaintiff. (*Id.*)

After speaking with Smell, Blisard contacted Kovatch regarding Plaintiff's poor workmanship. (*Id.*)  After considering the risk to the safety of others created by the hose failures, the extra work and expense incurred in cleaning up and correcting these failures as well as Plaintiff's general work history, Kovatch decided to terminate Plaintiff's employment. (*Id.*)

On June 1, 2004, Blisard met with Plaintiff to inform him that Plaintiff's employment with Defendant was terminated. (*Id.*)  Blisard gave Plaintiff a termination notice which stated:

> Over the last several years there have been many incidents of substandard work where hoses came apart.  This is a safety related problem that we can no longer tolerate.  Due to the latest incidents we are terminating your employment immediately.  You have previously received verbal warnings for lack of quality workmanship.

(Ex. Q, Doc. 24-18.)  Blisard testified that, at the time he terminated Plaintiff's employment, he did not know how old Plaintiff was and even thought that Plaintiff was younger than himself. (Doc. 23 at 13.)

Immediately after he was informed of his termination, Plaintiff ripped up notes he had made regarding aspects of hose assembly that he created on company time and maintained in the workplace. (*Id.*)  Plaintiff did so because he "felt that why should I leave someone else all of my hard work that I did . . . ."  (*Id.*)

After Plaintiff's termination, his job duties were redistributed to other employees of Defendant. (*Id.*)  The ages of these employees were fifty-three (53), forty-two (42), thirty-nine (39), thirty-five (35) and fifty-seven (57). (*Id.*)  Defendant did not hire a full-time hose assembler to replace Plaintiff until more than one year after Plaintiff's termination. (Doc. 23 at 14.)  The age of Plaintiff's replacement is not included in the record.

Since his termination, Plaintiff has not filled out any applications for new jobs or

sent any resumes to prospective employers. (*Id.*)  Plaintiff did place several phone calls

to prospective employers. (*Id.*)  However, since the beginning of 2005, Plaintiff has taken

no action whatsoever to find employment. (*Id.*)

In November 2004, Plaintiff filed a charge of discrimination with the EEOC. (*Id.*)

After investigating his claim, the EEOC was unable to conclude that Plaintiff was the

subject of unlawful discrimination. (*Id.*)  The EEOC issued Plaintiff a right-to-sue letter on

June 2, 2005. (*Id.*; *see* Ex. T, Doc. 24-21.)

The Court also adopts the following facts to which Plaintiff has averred in his

affidavit (Doc. 25-2).  Plaintiff manufactured an average of seventy (70) hoses per day.

(*Id.* ¶ 3.)  Over the course of his seventeen (17) years of employment with Defendant,

this would amount to one million four hundred forty-four thousand (1,440,000) hoses. (*Id.*)

No hose was ever reported to have been faulty until May 2004. (*Id.* ¶ 4.)  Plaintiff used a

bench-mounted machine, the T-400 "Coll-o Crimp", to install fittings on hoses. (*Id.* ¶ 5.)

Defendant's reference to "marking" the depth of the fitting on the hose prior to inserting it

in the fitting is not part of the procedure for the use of the bench-mounted crimper, but is

required for a crimping tool which is not bench-mounted. (*Id.* ¶ 7.)  The reason for

marking a hose when using a portable tool is that the hose may be pushed out when

using the portable tool.  This is not possible when using the bench-mounted crimper. (*Id.*

¶ 9.)

The hoses which Plaintiff made in late May 2004 were a new style, thicker hose

that had not previously been used by Defendant, and that it took two failed efforts to

properly assemble that style hose. (*Id.* ¶ 10.)  This new style, thicker hose differed from

the other hoses in that it had a smaller inside diameter. (*Id.* ¶ 12.)  The end fittings were

made for the old hose and thus did not fit into the new style, thicker hose as easily. (*Id.*)

After realizing that greater force was needed to insert the fitting, Plaintiff was able to make hoses without any problem. (*Id.*)  Plaintiff explained this to Smell when he brought the second failed hose to me in May 2004. (*Id.* ¶ 13.)  The failure of the two hoses was not related to "marking" the hose for the depth of the fitting. (*Id.* ¶ 14.)  Rather, the failure of the hoses was caused either by Defendant not obtaining the appropriate parts or an error in installation of the hose on the fire truck. (*Id.* ¶ 15.)

Plaintiff disputes Arndt's characterization of Plaintiff's attitude toward work as negative and, instead, avers that he approached his work in a positive and craftsmanlike manner. (*Id.* ¶¶ 16-18.)  Plaintiff was never counseled or otherwise disciplined at any time for having a negative attitude. (*Id.* ¶ 19.)

Plaintiff also disputes Arndt's claim that Plaintiff refused his request for an expedited assembly of a hose. (*Id.* ¶¶ 21-22.)  Plaintiff avers that he never refused to assemble a hose on an expedited basis. (*Id.* ¶ 22.)  Plaintiff was never counseled or otherwise disciplined at any time for refusing to make a hose on an expedited basis. (*Id.* ¶ 23.)

Plaintiff disputes Smell's statement that "on numerous occasions . . . [Plaintiff] assembled hoses and/or lines in such a manner that they failed when [used] as intended." (*Id.* ¶¶ 25-26.)  Plaintiff avers that, until May 2004, no hose that he assembled failed during testing or while in use.  Some may not have been properly assembled but Plaintiff detected the error prior to providing the hoses for installation. (*Id.* ¶ 26.)  Plaintiff was never counseled, otherwise disciplined or even told at any time prior to May 2004 that any hose that he made had failed during testing or while in use. (*Id.* ¶ 27.)

Plaintiff also disputes Smell's statement that Plaintiff would refuse to make hoses for people with whom he did not get along. (*Id.* ¶ 29.)  Plaintiff avers that he never

refused to make hoses for anyone (*Id.* ¶ 30), and was never counseled, otherwise disciplined or even told at any time that anyone had complained that he had refused to make a hose (*Id.* ¶ 31).  Other than his own affidavit, Plaintiff has not submitted any evidence and, for the most part, refers to Defendant's evidence.

After receiving his right-to-sue letter, Plaintiff filed this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631, *et seq.*, on July 18, 2005. Plaintiff alleged that Defendant discriminated against him on the basis of his age when it terminated him on June 1, 2004.  On October 21, 2005, this case was referred to the Magistrate Judge. (Doc. 10.)  On July 18, 2006, Defendant filed a motion for summary judgment (Doc. 22).  On January 12, 2007, the Magistrate Judge issued his Report and Recommendation (Doc. 27) recommending that Defendant's motion be granted.  Plaintiff filed his Objections to the Magistrate Judge's recommendation on January 22, 2007. (Doc. 28.)

## LEGAL STANDARD

### I. The Magistrate Judge's Report and Recommendation

When objections to a magistrate judge's report are filed, the Court must conduct a de novo review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its de novo review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is de novo, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749

F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).

Uncontested portions of the report may be reviewed at a standard determined by the

Court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the very

least, the Court should review uncontested portions of the report for clear error or

manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## II. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  FED. R. CIV. P. 56 (c).  A fact is material if proof of its

existence or non-existence might affect the outcome of the suit under the applicable

substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law.  Where, however, there is a disputed

issue of material fact, summary judgment is appropriate only if the factual dispute is not a

genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury

could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of

proving that (1) there is no genuine issue of material fact; and (2) the moving party is

entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party

may present its own evidence or, where the nonmoving party has the burden of proof,

simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The court need not accept mere conclusory allegations or denials taken from the pleadings. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### DISCUSSION

In the instant matter, Plaintiff objects to the Magistrate Judge's recommendation that Defendant's motion for summary judgment be granted because: (1) the Magistrate Judge applied "an incorrect standard of review to the question of pretext in a *McDonald* [sic] *Douglas* analysis"; (2) the Magistrate Judge resolved disputed facts in favor of Defendant; and (3) the Magistrate Judge improperly deconstructed the quantum of evidence adduced by Plaintiff, rather than considering it cumulatively. (Doc. 28.)

However, Plaintiff devotes his entire brief to essentially a single argument – that there is sufficient evidence to raise an inference that Defendant's reason for his termination was a pretext for discrimination.  To this end, Plaintiff puts forth several contentions.[1]

First, Plaintiff argues that the Magistrate Judge mistakenly ignored the fact that Defendant relied on Plaintiff's failure to mark the hoses as a legitimate, nondiscriminatory reason for terminating him.  Because the machine Plaintiff used, the bench-mounted crimper, did not require hoses to be marked, Plaintiff argues that Defendant's offering of this false reason demonstrates that Defendant's other reason for terminating Plaintiff – the two faulty hoses – was a pretext for age discrimination.  Second, Plaintiff argues that "it is inherently incredible that after seventeen years of making hoses with no record of failure, having made over a million hoses for [Defendant], . . . that [he] would be terminated for two faulty hoses."  Third, Plaintiff contends that Defendants have not produced any evidence that he had a record of poor performance, other than a warning related to reading a newspaper at work.  The Court rejects Plaintiff's contentions and will overrule his objections.

After finding that Plaintiff had established his prima facie case of age discrimination (Doc. 27 at 18-23), the Magistrate Judge concluded that Defendant had satisfied its burden of showing a legitimate, nondiscriminatory reason – the Plaintiff's defective assembly of two high-pressured hoses which failed during pump testing – for its decision to terminate Plaintiff. (*Id.* at 23-24.)  The Magistrate Judge noted that these hose failures undisputedly cost Defendant both time and money, and could have resulted in

---

[1]As to issues or recommendations not objected to by Plaintiff, the Court finds no clear error or manifest injustice.  The Court will thus adopt the Magistrate Judge's uncontested recommendations.

dangerous situations. (*Id.* at 23.)  The Magistrate Judge also observed that Plaintiff

testified that the only reason he was given when he was terminated was because of the

failure during pump testing of the two hoses which he assembled. (*Id.* at 24.)  The

Magistrate Judge then found that Plaintiff had failed to provide evidence that would raise

an inference of pretext, concluding that the evidence of pretext that Plaintiff offered would

not allow a reasonable fact finder to disbelieve Defendant's articulated legitimate reason

for terminating him. (*Id.* at 25-28.)

       The United States Court of Appeals for the Third Circuit has stated that a non-

moving plaintiff may show pretext and defeat a motion for summary judgment by

providing evidence that would "allow a fact finder reasonably to '(1) disbelieve the

employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory

reason was more likely than not the motivating or determinative cause of the employer's

action.'" *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 799-800 (3d Cir. 2003) (quoting

*Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999)). A non-moving plaintiff

may meet this burden by demonstrating "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

reasons for its action that a reasonable factfinder could rationally find them unworthy of

credence." *Glanzman v. Metro. Mgmt. Corp.,* 290 F. Supp. 2d 571, 578-79 (E.D. Pa.

2003).

       The Magistrate Judge correctly found that Plaintiff failed to produce sufficient

evidence to show that Defendant's proffered reason for why Plaintiff was terminated was

a pretext for age discrimination.  Indeed, the Magistrate Judge rejected each of the

contentions Plaintiff now raises before this Court.

First, the Court rejects Plaintiff's argument that the Magistrate Judge mistakenly ignored the fact that Defendant relied on Plaintiff's failure to mark the hoses as a reason for terminating him, a false reason according to Plaintiff because the bench-mounted machine he used did not require hoses to be marked.  Plaintiff stated in his deposition that he was told that he was being terminated because he had assembled two faulty hoses which failed during testing, costing Defendant time and money and creating dangerous situations to co-workers.  The termination notice given to Plaintiff supports Plaintiff's testimony, as the notice states that "[d]ue to the latest incidents we are terminating your employment immediately."  As such, the Magistrate Judge correctly concluded that Defendant's reason for terminating Plaintiff was the two failed hoses.

The Court likewise rejects Plaintiff's second objection, that "it is inherently incredible that after seventeen years of making hoses with no record of failure, having made over a million hoses for [Defendant], . . . that [he] would be terminated for two faulty hoses."  Plaintiff's objection is contrary to his own deposition testimony, in which he stated that there were numerous times when hoses he had assembled came apart.

The record also does not support Plaintiff's final objection, that there was no evidence that he had a record of poor performance, as Defendant has offered Plaintiff's performance reviews for the years 2001 and 2002, reviews which both reveal that Plaintiff needed improvement.  Accordingly, Plaintiff's objections will be overruled.[2]

---

[2]The Court also rejects Plaintiff's conclusory argument that the Magistrate Judge "deconstruct[ed] Plaintiff's argument that Defendant['s] reasons are unworthy of belief."  In the Court's view, the Magistrate Judge correctly considered the record as a whole and rejected Plaintiff's contentions.

**CONCLUSION**

For the above stated reasons, the Court will overrule Plaintiff's Objections and, instead, adopt the Report and Recommendation of the Magistrate Judge.

An appropriate Order follows.


 March 20, 2007                                       /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                      United States District Judge

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD HARVAN,

    Plaintiff,

       v.

KOVATCH CORPORATION,

    Defendant.

CIVIL ACTION NO. 3:CV-05-1431

(JUDGE CAPUTO)

## ORDER

    **NOW**, this   20th   day of March, 2007, upon review of Magistrate Judge

Thomas M. Blewitt's Report and Recommendation (Doc. 27), **IT IS HEREBY ORDERED**

**THAT**:

    (1)    The Report and Recommendation (Doc. 27) is **ADOPTED**.

    (2)    Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**.

    (3)    Plaintiff's claims are **DISMISSED**.

    (4)    The Clerk of the Court shall mark this case as **CLOSED**.

          /s/ A. Richard Caputo
          A. Richard Caputo
          United States District Judge